Case up this afternoon. It's 411 0751 people versus Darius R. Johnson. Appearance of Amber Gray. Amber Corrigan. For the appellant, Thomas Dodeke. Pronounce correctly. For the appellee, Ms. Corrigan, you may proceed. Good afternoon. May it please the court. Counsel. My name is Amber Corrigan, as I stated, and I represent the defendant in this matter, Darius Johnson. With the court's permission, I intend to limit my argument this afternoon to argument one of Mr. Johnson's brief. Certainly, if there are questions regarding arguments two and three, I'll be happy to address those. Okay. I want to begin this afternoon with identifying the facts that everyone, including the alleged victim in this case, GW, agree on. That is that nobody forced GW. Nobody threatened GW. GW did not try to, nobody's tried to stop her from leaving. GW never said to stop. GW never said she did not want to have sex. GW took her own pants down. And by her own admission, GW was worried that evening about getting a DUI and did not want to be near her car. I point out these facts because I believe they are critically important in this case because the state had to demonstrate beyond a reasonable doubt by its own charge that Mr. Johnson committed an act of sexual penetration by the use of force or the threat of force. And in this case, I submit to this court that the state did not demonstrate that beyond a reasonable doubt. And how do we know that? Well, we have definitions to help us in this case. First, we have the definition of force. The definition, barring reading it to this court, demonstrates that there has to be some kind of force or threat of force demonstrated. If there's no threat of force or force, meaning that someone overcomes you by superior strength or size, then you cannot sufficiently demonstrate that the defendant is guilty of a crime in this case. What we have in this case is, I would say, consent. And obviously, if you're arguing that there is no force, by extension, you're saying that there was consensual sex between the defendant and the alleged victim, in this case, GW. And again, when we start to look at consent, and even when we start to look at threat of force cases, those cases demonstrate that there has to be something more than what we have in this case. For instance, I'll use the cases that I know that the state cited to in its brief. People v. Nelson and people v. Boutrous. In people v. Nelson, for instance, we have a runaway in that case who goes to the defendant's home. Now, granted, it is not a stranger. But she goes to the defendant's home. He invites her down to the basement, where he argues that they have consensual sex. In that case, the state was able to demonstrate, via the testimony of the alleged victim, that she struggled, that she was thrown to the floor, that the defendant muffled her screams. And in this particular case, with Mr. Johnson, we don't have any of those things. According to the victim in this case, as she entered the laundry room, she was told to get down. That's correct, Your Honor. That was uncontradicted? The defendant doesn't recall the statement. I guess then it's uncontradicted? Yes, he doesn't remember saying the statement, but he doesn't deny saying the statement. You're correct, Your Honor. How, under the circumstances of entering the laundry room with these two men and being told to get down, does that comport with consensual sex? Well, in my opinion, Your Honor, and I think the case law supports this, she doesn't say anything at that point in time to lead the defendant to believe that it's not consensual. She gets down without any kind of objection. She then takes her own pants and underwear off. That's uncontradicted. She agrees to that. And then she says, there's testimony that says she froze, but she never says to stop. My reference, my focus was on the defendant saying, telling her to get down as they entered the laundry room. How is that consistent with consensual sex? Well, as he testifies, she has to be, they initially start to have sex in this case, and he says it was uncomfortable, so she got down on her hands and knees to make it more comfortable. I mean, she has to, for lack of a better word. The trial court, as a prior fact, believes her description that as soon as she walked into the laundry room, that's what he told her. How does that comport with consensual sex? Well, because there's no force. She doesn't resist in any way. And even if, you know, if the prior fact believes her testimony, there's also, you know, it's not just she's taken into a laundry room and it happens instantaneously. There is a conversation leading up to going into that laundry room. And that conversation includes the defendant, which she agrees, calling his grandfather, the phone call is made, there is some kind of conversation, he's trying to help her, and then he takes her into the laundry room. And she also, I would clarify, it's kind of confusing in the record, but everyone just kind of ends up in the laundry room. There's no real testimony that she's escorted, she's not drugged there. She walks into the laundry room of her home free will. Nobody touches her in any way. She is told to get down, you're correct, but then they proceed to have sex. She never says no. You know, there's no resistance of any kind and there's no force of any kind. So that, I think, demonstrates a freely given agreement, or at least at the very minimum, that it was reasonable at that time for Mr. Johnson to believe that they were having consensual sex, which is another aspect of this case. You know, he doesn't see her behave in any way that would lead him to believe it's not consensual. I mean, certainly, if he says, get down, and she says, I don't want to, that would be something entirely different than what we have in this case, especially given the circumstances that they are, in fact, helping her. They have made a phone call, and then they go into the laundry room. It's not an instantaneous, you know, she's not being drugged to the laundry room, certainly. And again, she's the one that doesn't want to be near her car because she is afraid of getting a DUI. So that's what I think demonstrates consent in this case. And I would also suggest, too, you know, in the consent, because we're looking at consent, that lack of resistance does matter in this case. And again, I don't see anything in these facts that would indicate it was unreasonable for him to believe that it was consensual. And that includes even having Spud or the unidentified male in the room, because he doesn't touch her at all. I mean, she says there's some kind of physical contact, but she can't remember. She doesn't really know where he is. And again, they were assisting her at the time. I would also just like to briefly touch on the description of the laundry room, just, you know, so we're all kind of clear. Again, there is some testimony about it being dark, but it's lit enough that everyone knows it's a laundry room. I don't think there's any question about that. As a matter of fact, GW can testify that there's coin-operated machines in there, indicating that it is somewhat lit. There's hallway light on the outside. And also, one of the officers, I think it's Closen, testifies that the lights were on, he thinks, when he went in there. So this isn't... So, what time was this? Well, the timeline is a little fuzzy, but... We know it's after the bar closed. Yes, we're after the bar closed. We're guessing anywhere between 2 a.m. and, let's say, 3.45 a.m. All right. So between 2 and 3.45 a.m. Correct. Your client, who, I'm presuming this came in, denied having sex with anybody, and claimed that the DNA was because there was another Darius Johnson, and then said the victim was afraid of the police, so that's why they had to go to the back of the building. And I don't know what, the inference, they had to hide in the laundry room? So she accompanies this intoxicated woman at 2.30 in the morning, or 2 in the morning, is walking with two men who lead her to a semi-dark or semi-light basement laundry room in the back of the building, I take it, pretty far away from wherever the collision occurred, but she collided with a light pole or whatever. A car. A car. And one of the men tells her, get down on the floor. And you don't think the inference from that that a trial judge could draw in a bench trial was that there was a level of coercion there that if we were talking about whether a defendant felt that he was under arrest, if these were two police officers who escorted that guy down there to question him, would he think he was under arrest? I think he would. If we were talking about whether he should have been arandized or whatever, I think she thought she needed to do what they told her to do. I mean, I think that's the inference that a trial judge can draw from the evidence. Well, and I would, I'm going to try to answer the question in a two-fold way. I mean, certainly the standard review, you know, the trial judge in this case is allowed to make the reasonable inferences from the facts of the case. But we also have to look at the evidence, you know, is it unsatisfactory to support the charge? And I think in this case, certainly there may be instances, I'm not trying to say in every case, where maybe somewhat similar facts are demonstrated where perhaps it's two against one. But in this particular case, I'm saying we need more. Because of the simple fact that there is this conversation before they go into the laundry room. There seems to be no question about that. They go, and the defendant doesn't suggest that they went to the laundry room to hide. I think it's more of a suggestion of at that point. Well, he says that's why we went to the back of the building. Correct. That's why they went to the back of the building. But then to actually go into the building, he suggests that that was more because they had been discussing having sex. Now, again, that's contradicted by the record, so that's not an agreed upon fact. But that's why he suggests that they went in there. And I'm saying that what happens from the point when they go into that laundry room until they leave, I think a reasonable person would think it's consensual. Again, she doesn't say she's led into the laundry room. She says, you know, I just went with them. She says someone tells her to get down. She did get down. She also then, when she's getting down or as she's getting down, takes off her own pants. So if you're watching that as a defendant who believes he's having consensual sex, and then she doesn't say anything. She doesn't say no. She doesn't say stop. There's no force. Nobody tries to, you know, keep her in the laundry room, certainly. I mean, by her own testimony, when it ends, she gets up and she leaves. Would you agree that absent the discussion about sex, that the circumstances were at least arguably coercive? Dark, drinking, scared, accident, two men, take her to a place in some fashion or she follows them to a place, and words are spoken, get down on the floor. Would you agree that that is at least arguably coercive? I don't think I would agree with you. I think I would respectfully disagree that that's arguably coercive in the sense that, and I'm still leaning, I know that there's, I'm leaning on that there's this conversation beforehand, but I'm saying in this particular case, because we're talking about consent, because I don't think there's any question I think the state would agree that there is no force. Right, but your interpretation of consent is absent words that are specific to threat or resistance. It's consent. Yes, I mean, because there's a lack of verbal or physical resistance or submission. Now, if there's no threat or force or threat of force. But again, the complainant's inaction is important in this case, because there is this argument of consent, and the state has the burden to prove that it wasn't consensual beyond a reasonable doubt. Well, what do we do with the defendant saying, I don't know what you're talking about, we didn't have sex. If somebody had sex, it's not my DNA because there's another Darius Johnson. I mean, that's so nonsensical, it makes that individual somewhat less credible as a witness. Well, I would say that each of these individuals has some credibility concerns, certainly. But as far as Mr. Johnson is concerned, I would say that his responses on the stand were certainly reasonable. You know, one, he says that, and the officer does not deny that, he started the interview by saying, I'm investigating rape. I'm investigating criminal sexual assault. I don't think it's unreasonable in that instance to immediately, especially in this case when you think you've had consensual sex with someone, obviously he says he doesn't initially remember it. It's over a year later. He doesn't ever get her name. He does admit that on the stand. And he says, you know, it just didn't occur to me. I mean, it is a year later again. But when someone starts a conversation with, I'm investigating criminal sexual assault, I think it would be reasonable to want to distance yourself from that charge when you don't believe you're guilty of that charge. And he does, even from the very first appearance, he talks about there being someone else named Darius Johnson. So it's not just when he's...  The reasonable thing would be saying, yeah, we had sex, but it was consensual, not saying there's another Darius Johnson out there and you've got the wrong guy. That's a bizarre response to the interchange with the police officer. I would agree it's somewhat bizarre, but in the circumstances, given that it's a year later, I would also... It seems to me that when this warrant is issued, he had just got done serving a period of time. I think that comes out in the record. So, again, there's this idea of when he's put in that position, maybe it would be bizarre to someone on the outside, but for him, sitting there a year later, about something he didn't really consider or think about that much, and someone says, well, you know, we have your DNA there, and he knows that there's another Darius Johnson. Well, that's a permissible view, but isn't the prior fact permitted to draw an inference of guilty knowledge? Based on these facts, I don't think so. I mean, I grant you that it's questionable when he says, you know, he doesn't admit to having sex with anyone in the laundry room, but, again, he does reasonably explain that by saying, I didn't remember it. Well, he reasonably explains it to you. The question is, is it unreasonable for the prior fact to conclude otherwise? I think it's unreasonable, given the facts that come out at the bench trial. We're supposed to view this in a light most favorable to the state. That's correct. Why isn't viewing it in a light most favorable to the state to view the defendant's remarks as indicative of guilty knowledge and trying to hide something? Perhaps it is reasonable to assume that, you know, he's trying to distance himself from what is being placed in front of him. But what is being placed in front of him is, we're investigating a criminal sexual assault, and he wants to distance himself from that charge. I don't think there's really any question of that. I mean, he protests his innocence from start to finish. So, he wants to distance himself from that charge, and I don't think that's unreasonable. Even if you're drawing reasonable inferences on behalf of the state. And again, that all comes back to also the facts of this case. Given the case law in this area, this case comes down to almost a two versus one is enough. And I don't think, based on the case law, that can ever be enough. There has to be something more in this case. Either resistance on the part of the alleged victim, you know, some kind of force or threat of force on the part of the defendant. I mean, he doesn't say or do anything. And again, she also doesn't know, I mean, she doesn't know who tells her to get down. We don't know which one it is. I don't think for the purposes it's necessarily critical that we know who said it. But again, that's really all that this case offers. I can see that my time has almost expired, so if there are no questions, I'll reserve my other comments for a moment. You'll have an opportunity to address this again remotely. Thank you. Thank you. Okay, Mr. Doherty. May it please the Court, Ms. Corrigan. Counsel. Prior to discussing defendant-specific conduct, I think it is helpful to put defendant's conduct in context by talking about the general circumstances that occur. This has been partly brought, or it has been brought out somewhat by Justice Knack, but with the Court's indulgence, I'll repeat that. The victim in this case, G.W., drove into a parked car at some time in the early morning hours after she had been drinking. The defendant and another man approached her. The victim did not know either of these men. The defendant offered to help get her car fixed. They then went to a nearby apartment building. The State submits that defendant's acts then, defendant and the other man's acts then, created a highly intimidating situation that coerced the victim into submission. This occurred when the two men led the victim into a somewhat dark, at least in a deserted laundry room, when the victim was told to get down, when the other man stood in front of the victim and when the defendant sexually penetrated her. The victim testified that she was too scared and that she froze just prior to, literally froze, just prior to the sexual penetration. In other words, that she was paralyzed by fear. The defendant contends that this fear was not justified, but I would suggest that that fails to consider the intimidating circumstances that were created, the inherently intimidating circumstances. The standard of review, of course, is well established. It is whether taking the evidence in the most light, most favorable to the prosecution, any rational prior of fact could find the essential elements of the crime beyond the reasonable doubt. The State submits that applying this standard of review, these actions do constitute force or threat of force. That concludes my prepared statement. What about, we've heard a lot of argument from Ms. Corrigan about what appears to me to be how the situation could have appeared to the defendant. You're talking about how it appeared to the victim. To what extent, as the trial court and this court evaluates all this evidence and decides whether the State is privileged to charge beyond the reasonable doubt, are we supposed to view this objectively or subjectively and subjectively from whose point of view? The question of whether or not there was force or threat of force is, I believe, an objective evaluation. There has to be force or threat of force. Your position is the threat of force under these circumstances was implicit as understood by the victim when she said she was scared for her safety or whatever. First of all, I would suggest that taken objectively, the force or threat of force was established by the defendant's actions, which I've just tried to set forth. I would also suggest that the victim was paralyzed by fear, which, under the case law, indicates that there does not have to be physical force. You heard Ms. Corrigan's argument. Essentially, from the defendant's point of view, maybe this looked like she was in consent mode and he's surprised that there's a criminal case being brought. Should that be of any concern to the trier effect or to this court? The statute provides that consent is a freely given agreement to an act of sexual penetration. It further provides that lack of resistance or submission, which is the result of force or threat of force, does not constitute consent. I would submit that there was no consent here because of the force or threat of force. Okay. Thank you, Mr. Doherty. Ms. Corrigan, any rebuttal? Okay. Thank you. I would just like to address some of the points that the State raised and also maybe address your question, Justice Steinman. First, I don't believe that this defendant, it's fair to say that Mr. Johnson created this situation. We all have to take responsibility for our actions. In this particular case, the alleged victim, GW, there's no question that Mr. Johnson has nothing to do with what happens when she runs into the parked car. But is there anything to do with directing her and escorting her into the darkened laundry room? The darkened hallway into the laundry room? I would say she doesn't remember. She testifies. She has no idea who goes in first. This wasn't her decision to go into that building or down the steps and into the laundry room, was it? Well, I think there's an inference here that she at least wants to get away from her car. She readily admits on the stand that she did not want to be near her car because she was afraid of getting into UI. And I think the rest of the evidence supports that. I mean, she doesn't immediately... So she wanted to get away from her car, but as far as going to this location, that was the defendant's doing, wasn't it? The defendant, yeah. He says, we're going to go across, we're going to... Well, he doesn't really say anything. They just end up behind the building. The other thing is, neither one of these people know where they're at. He doesn't live there and she doesn't live there. So, again, I don't know that he's really... I don't believe he's creating this intimidating situation. So it's just good luck from his point of view that there happened to be this empty laundry room that he could go into for consensual sex to be engaged in? I think that certainly the record would support that. I mean, he says when they're going down the stairs... I mean, he doesn't know there's a laundry room there. Now, he does say, I believe, that he didn't think it was an apartment, certainly, but he doesn't know the area any better than she does. That's what he testifies to, and I think, you know, neither one of them are residents there, certainly. As far as the state's position that she froze and she was so paralyzed by fear, again, in the context of how this happened, she does not testify that she froze until after she has assumed a position and taken her own pants down. Didn't she testify she was fearful as she entered the laundry room? She said she assumed that she knew what was going on and that she doesn't testify that initially. That comes out when, I believe, on cross-examination, he says, why did you go in the room? And she says, well, I don't know. I just, you know, I knew what was going on. But that's not based on anything that the defendant said or did to her at that time. That's just her assumption. And as far as the standard of review, Your Honor, your last question, in People v. Wheeler, they talk about this idea that you have to consider all the evidence, not just the evidence that's convenient to the state's theory of the case. So you do have the ability to look at the entire record. And, again, reasonable people can act unreasonably. That's why you can review a case for reasonable doubt, and that's why you can look at the whole case. You know, it's not just the evidence, like I said, that supports or doesn't support the state's theory. It's all the evidence. And if there are no questions, what we're requesting is for this Court to vacate Mr. Johnson's sentence and conviction. Thank you. Thank you, counsel. We'll take this matter under advisement, being recessed for a few moments.